IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GERALD SPRUELL,<br><br>*Defendant.* | CRIMINAL ACTION<br>NO. 18-00449 |

**PAPPERT, J.**                                                                                                       April 12, 2021

### MEMORANDUM

A grand jury in the Eastern District of Pennsylvania charged Gerald Spruell with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Spruell moves to suppress evidence gathered from a search of his car pursuant to a warrant. He contends police arrested him without probable cause, so the Court must suppress evidence obtained from the subsequent car search. Alternatively, he argues the search violated the Fourth Amendment because officers lacked probable cause. The Court held a suppression hearing on April 8, 2021 and denies Spruell's Motion in all respects.

I

A

On March 15, 2018 around 12:30 a.m., Philadelphia Police Officer Brian Egrie, who testified credibly at the hearing, saw a 2004 Pontiac Grand Prix having mechanical problems in a southbound lane of the heavily-trafficked 700 block of South Christopher Columbus Boulevard. (Hr'g Tr. 6:22–8:9, ECF 85.) Officer Egrie noticed the car's rear lights were flashing and watched as it attempted to move several times, each time

1

stalling and stopping. (*Id.* at 9:19–22.) He followed the Grand Prix for about one block until it stopped, appearing disabled. (*Id.* at 35:9.) Egrie turned on his rear emergency lights and parked behind the Grand Prix in the right travel lane. (*Id.* at 12:3–6.)

Egrie approached and the driver lowered his window. (*Id.* at 12:15–25.) Spruell was driving the car and Egrie smelled an alcoholic beverage. (*Id.* at 16:20–17:1.) For safety from passing traffic, he asked Spruell to turn his hazard lights on, get out of the car and walk with him to stand behind it. (*Id.* at 12:24–13:4.) Spruell complied without objection. (*Id.* at 14:8–14.) At that point, a passenger got out of the car and walked away. (*Id.* at 16:5–8.) When Egrie told the passenger he could stay in the car, Spruell said the man wanted to walk. (*Id.* at 16:9–10.) Egrie asked Spruell for identification and whether he needed help with the car. (*Id.* at 15:6–13, 25.) As Spruell flipped through his wallet looking for his driver's license, Egrie noticed a license bearing the name "Spruell." (*Id.* at 15:24–16:4.) Suddenly, Spruell locked the car and fled. (*Id.* at 17:21–24.) Spruell does not allege that Egrie touched him, put handcuffs on him or frisked him at any point before he ran away. And at the hearing, Egrie testified that he did none of those things. (*Id.* at 17:9–18.)

Egrie did not chase after Spruell. (*Id.* at 18:4–5.) He returned to his squad car and ran a check on the Grand Prix, which was registered to Spruell. (*Id.* at 18:10–14.) He then, using a flashlight, looked into Spruell's car. (*Id.* at 19:24–25.) He saw a Glock 19 9mm pistol with an extended magazine in plain view on the rear passenger seat. (*Id.* at 18:17–18); *see* (Gov't Exh. 6). He also saw a black and silver Smith & Wesson pistol on the floor. (*Id.* at 18:18–20); *see* (Gov't Exh. 6). Egrie had the Grand Prix towed to a police garage. (*Id.* at 20:8–9.)

Later that day, Detective John Maha interviewed Egrie about his interaction with Spruell and what he saw inside the Grand Prix. (*Id.* at 54:5–9); (Gov't Exh. 1.) The Court also found Detective Maha's hearing testimony credible. Armed with that information—and the fact that Spruell was a felon prohibited from possessing a firearm—Detective Maha applied for and received a search warrant for the car. (*Id.* at 54:25–55:1); (Gov't Exh. 7.) He executed the warrant, recovering from Spruell's car the following arsenal: (1) a stolen Glock 19 9mm, loaded with thirty 9mm rounds in an extended magazine; (2) a stolen Smith & Wesson handgun loaded with one round in the chamber and ten rounds in the magazine; (3) a bag containing a holster and a black ski mask; (4) ammunition, including a 50-round drum magazine containing forty-three 9mm rounds; and (5) a Pennsylvania vehicle registration card bearing Spruell's name and address. (*Id.* at 62:12–67:22); (Gov't Exhs. 12–26.) Based on this evidence, a grand jury indicted Spruell, charging him with being a felon in possession of a firearm in violation of § 922(g)(1).

B

Spruell moves now to suppress the evidence obtained during the car search. (Def's Mot. to Suppress, ECF 79.) First, Spruell argues he was arrested without probable cause "the moment he was ordered to the rear of the vehicle and was not free to leave." (*Id.* at ¶¶ 5–6.) As a result, he believes the Court must suppress the evidence obtained from his car as fruit of the poisonous tree. (*Id.* at ¶ 6) (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)). Alternatively, Spruell contends his "car was searched without probable cause to believe the vehicle contained a seizable item." (*Id.*

3

at ¶ 7) (citing *Chambers v. Maroney*, 399 U.S. 42 (1970) and *Carroll v. United States*, 267 U.S. 132 (1925)).

The Government responds that Spruell's first argument fails because Officer Egrie did not arrest or seize him at any point during the traffic stop. (Gov't Resp. 5, ECF 80.) And it argues that probable cause supported the warrant and the search of Spruell's car because police observed firearms in plain view in the car and knew Spruell was a felon prohibited from possessing them. (*Id.* at 7.)

## II

### A

The Fourth Amendment guarantees an individual's right to be free from "unreasonable . . . seizures." U.S. Const. amend. IV. Courts must suppress evidence obtained as a result of an illegal seizure as "fruit of the poisonous tree." *Wong Sun*, 371 U.S. at 487–88. But "a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)); *see Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968) ("Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.").

Officer Egrie did not seize Spruell. First, he pulled behind Spruell's disabled car in a travel lane of a busy thoroughfare and activated only his rear lights for safety.

This reasonable act did not render the interaction a seizure.  *See, e.g.*, *United States v. Morales-Ruiz*, No. 08-cr-454, 2009 WL 3633838, at *1 (M.D. Pa. Nov. 2, 2009) (no seizure where "troopers activated the lights on their patrol car for safety reasons" when approaching disabled vehicle); *United States v. Bowra*, No. 16-cr-161, 2018 WL 1244521, at *17 (W.D. Pa. Mar. 9, 2018) (no seizure where officer activated lights "for safety purposes because he was parked in the southbound travel lane").  Then Egrie asked Spruell to walk behind the car so he could speak to Spruell without standing in the middle of the street.  That was not a seizure, either.[1]  Nothing about their discussion or its circumstances up to that point indicated Egrie was making a show of authority restraining Spruell's liberty.  Once Spruell got out of the car, Egrie asked for identification and limited his questions to the status of the car.  Considering "all the circumstances surrounding the encounter" it is clear that Egrie's actions would not have "communicated to a reasonable person that the person was not free to decline [his] requests or otherwise terminate the encounter."  *Bostick*, 501 U.S. at 439; *see Hiibel v. Sixth Jud. Dist. Ct.*, 542 U.S. 177, 185 (2004) (police may ask for identification "without implicating the Fourth Amendment").  Because there was no seizure, let alone an

---

[1] Even if it were a seizure, it was supported by reasonable suspicion.  *See Hiibel*, 542 U.S. at 185 ("[A] law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further.").  Egrie smelled an alcoholic beverage coming from inside the car.  That alone provided reasonable suspicion to briefly seize Spruell to determine whether he was drunk.  *See Navarette v. California*, 572 U.S. 393, 403–04 (2014).

illegal one, the evidence found in Spruell's car is not "fruit of the poisonous tree." *See Wong Sun*, 371 U.S. at 487–88.

B

The Fourth Amendment also protects individuals from "unreasonable searches." U.S. Const. amend. IV. A search pursuant to a warrant must be supported by probable cause. *See United States v. Burton*, 288 F.3d 91, 102 (3d Cir. 2002) (citing *Payton v. New York*, 445 U.S. 573, 586 (1980)). An issuing judge may find probable cause when "viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

In evaluating the issuing judge's probable cause determination, the Court conducts a deferential review, *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (citing *Gates*, 462 U.S. at 238–39), and considers only the facts that were before the issuing authority, *i.e.*, facts contained in the affidavit of probable cause. *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993). Importantly, the Court does not decide probable cause *de novo*, but rather determines whether the affidavit provides a "substantial basis" to support the conclusion that probable cause existed. *Stearn*, 597 F.3d at 554; *see also Gates*, 462 U.S. at 238. If a substantial basis exists to support the probable cause finding, the Court must uphold that finding even if it or a "different magistrate judge might have found the affidavit insufficient to support a warrant." *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993). The defendant bears the burden of establishing that his Fourth Amendment rights were violated. *United States*

*v. Acosta*, 965 F.2d 1248, 1257 n.9 (3d Cir. 1992) (citing *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)).

The police had probable cause to search Spruell's car. First, Egrie did not illegally search the car when he shined a flashlight into the back seat and saw two guns because "[a]s a general proposition, the police may see what may be seen 'from a public vantage point where [they have] a right to be.'" *Florida v. Riley*, 488 U.S. 445, 449 (1989) (quoting *California v. Ciraolo*, 476 U.S. 207, 213 (1986)). Any passerby could have stopped, looked into Spruell's car with a flashlight, and seen the same thing. *See id.*; *cf. Kyllo v. United States*, 533 U.S. 27, 34–35 (2001) (search occurred where police used technology "not in general public use" to obtain information about inside of home).

Second, the magistrate had a "substantial basis" to find probable cause and issue the warrant to search Spruell's car. This is not a close call. In his affidavit, Detective Maha explained that Spruell abandoned his car in a southbound lane of a busy street. (Gov't Resp., Exh. A.) Maha also disclosed that Egrie recognized Spruell as the driver and observed firearms in plain view inside the car. (*Id.*) Finally, Maha relayed that Spruell was a felon prohibited from possessing firearms. (*Id.*) These facts support the magistrate's finding of probable cause because there was far more than a "fair probability" that officers would find evidence of illegal gun possession inside the car. *See Gates*, 462 U.S. at 238.

An appropriate Order follows.

BY THE COURT:

 */s/ Gerald J. Pappert*  
GERALD J. PAPPERT, J.
